IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CYNTHIA ALVARADO, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO.: 12-1379 (MEL) |

**OPINION AND ORDER**

    I.    PROCEDURAL AND FACTUAL BACKGROUND

Cynthia Alvarado ("plaintiff" or "claimant") was born on November 27, 1971 and has a high school education. (Tr. 24; 563.) Plaintiff has prior work experience as a machine operator. (Tr.23.) On December 5, 2006 plaintiff filed an application for Social Security disability insurance benefits, alleging disability beginning on September 15, 2006. (Tr. 547.) The end of the insurance period was December 31, 2011. (Tr. 17.) Claimant's application was denied initially and upon reconsideration. (Tr. 15.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. She waived her right to appear and testify at the hearing held on March 3, 2010, but she was represented by counsel at the hearing and a vocational expert ("VE") testified at the hearing. (Tr. 15.) The ALJ rendered a decision on March 12, 2010, finding at step five that plaintiff was not disabled. (Tr. 26.) The Appeals Council denied plaintiff's request for review on March 22, 2012. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On May 22, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff

was not disabled was not based on substantial evidence. ECF No. 1, ¶¶ 2, 3, 6. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 11; 12.  Both sides have filed supporting memoranda of law. ECF No. 19; 20.

## II.     STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or impairments do not prevent him or her from performing past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the

---

[1] An individual's RFC is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III.    ANALYSIS

In the case of caption, plaintiff challenges the ALJ's decision at step five that she was not disabled. Specifically, plaintiff argues that the ALJ erred in discrediting the opinion of Dr. Robert D. Pancorbo, plaintiff's treating rheumatologist from the "Instituto de Arthritis del Oeste". ECF No. 19, at 10-11. Dr. Pancorbo diagnosed claimant with fibromyalgia and indicated that her illness causes generalized pain on both sides of her body, in her lumbosacral spine, cervical spine, thoratic spine, chest, shoulders, arms, hands and fingers, hips, legs, knees, ankles and feet. (Tr. 795.) He described her pain as moderately severe to severe. Id. He stated that her pain is constant in nature and may worsen with certain activities at home or at work, with prolonged sitting and standing, changes in weather, temperature, and stress. Id. He indicated that her experience of pain and other symptoms would "constantly" interfere with the attention and concentration necessary to perform even simple work tasks during a typical workday. (Tr. 766.) He also specified that she could not be expected to tolerate an eight hour work day, five days per week, on a sustained basis. Id.

The ALJ gave "some weight" to Dr. Pancorbo's opinion regarding plaintiff's condition, but disregarded "the portion of his opinion on the claimant's vocational functioning." (Tr. 23.) The reasons he gave for disregarding Dr. Pancorbo's assessment were that physical examinations of plaintiff did not reveal evidence of muscular atrophies or neurological problems and that the record purportedly showed that claimant's activities of daily living are not markedly limited as a result of her impairments. (Tr. 23.) Discounting Dr. Pancorbo's opinion, the ALJ assessed that claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except

that she is able to perform simple repetitive tasks, not involving contact with the public, but is able to have occasional contact with supervisors and coworkers. (Tr. 19.) Based on this RFC determination, the ALJ posed a hypothetical question to the VE, and concluded that plaintiff was not disabled based on the VE's reply that work existed in sufficient numbers in the national economy that the hypothetical individual could perform. (Tr. 24; 35-37.)

An ALJ evaluates all medical opinions he receives "[r]egardless of its source" unless a treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(d) (2012). To be given controlling weight, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quinones v. Astrue, 11-1618, 2012 WL 1502725, at *1 (1st Cir. May 1, 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, is not always required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)).

The ALJ's explanation that physical examinations have failed to exhibit "muscular atrophies and neurological deficits" is not a good reason for discounting Dr. Pancorbo's opinion regarding plaintiff's condition. As the First Circuit has noted, a "lack of objective findings to substantiate [a claimant's condition] . . . is what can be expected in fibromyalgia cases." Johnson v. Astrue, 338 Fed.Appx. 3, 7 (1st Cir. 2009) (finding that the ALJ failed to give good reasons for discounting a treating rheumatologist's RFC assessment of a fibromyalgia patient and

4

remanding to Commissioner). Fibromyalgia is "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." Id. at 4 (citing Stedman's Medical Dictionary, at 671 (27th ed. 2000)). "Further, "[t]he musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities." Id (citing Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)).

 Overall, the primary reason the ALJ gave for disregarding the occupational limitations noted by Dr. Pancorbo amounts to an explanation that objective medical evidence did not substantiate Dr. Pancorbo's findings. The medical evidence in the record, however, is consistent with a diagnosis of fibromyalgia. As acknowledged by the ALJ, claimant's medical record from "Instituto de Arthritis del Oeste" dated July 11, 2007 through November 14, 2007 showed "evidence of fibromyalgia tender points." (Tr. 20; 726; 730; 731.) "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions . . . ." Rogers v. Commissioner of Social Sec., 486 F.3d 234, 244 (6th Cir. 2007) (citations omitted). "Since trigger [a.k.a tender] points *are* the only 'objective' signs of fibromyalgia," by suggesting that evidence of muscular and neurological deficiencies was necessary to support the diagnosis "the ALJ 'effectively [was] requiring evidence beyond clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines,' and this, we think, was error." Johnson, 338 Fed.Appx. at 6.

 The ALJ also found that the claimant's own statements regarding the intensity, persistence and limiting effects of her symptoms were not credible, to the extent that they are inconsistent with the ALJ's own RFC determination. (Tr. 21.) The ALJ stated that claimant is able to take care of her personal needs without supervision, go shopping, and "do some household chores." Id. The ALJ also noted that claimant "enjoys reading the newspaper and

5

magazines" and that "[s]he watches television and listens to the radio." Id. He found that "[t]hese activities of daily living not only negate claimant's allegations concerning her functional limitations, but also negate the conclusion that claimant has a disability condition." (Tr. 21-22.) First, the ability to engage in some daily activities and to take care of her personal needs unsupervised does not foreclose the possibility that she suffers widespread chronic pain. As plaintiff points out, plaintiff's household tasks can be done at her own pace and on her own terms, and do not involve the type of ongoing demands that full-time employment would entail. Thus, her abilities to take care of personal needs unsupervised and to do "some" household tasks does not necessarily contradict Dr. Pancorbo's opinion that the pain she experienced would impact the attention and concentration necessary to perform simple occupational tasks throughout a workday, or his opinion she could not tolerate the demands of a full-time workweek on a sustained basis. See e.g., Punzio v. Astrue, 630 F.3d 704, 712 (7th Cir. 2011) (noting that a claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); see also Johnson, 338 Fed.Appx at 8 (noting that the claimant's ability to engage in daily activities such as "light housework, meal preparation, and driving short distances" was "not necessarily inconsistent with [the treating physician's] opinion that claimant could sit for four hours per eight-hour day and could walk and stand for one hour during the same time period.").

The ALJ also chose to discredit plaintiff's complaints of chronic pain because "the medical evidence fails to show a marked[ly] diminished range of motion or muscle atrophy as would accompany the alleged disability." (Tr. 22.) The ALJ stated that there were "inconsistencies between claimant's allegations and the evidence in the record," citing to a neurological consultative examination conducted by Dr. Samuel Méndez on February 8, 2007.

(Tr. 20.) The ALJ noted that the claimant complained of widespread pain across her body to Dr. Méndez, but physical examination demonstrated normal manipulative function. Id. Lastly, the ALJ also gave little weight to the opinions of Dr. Sadi Ramírez Pérez and Dr. Luis Freytes "because of the minimal objective evidence of physical impairments, . . . but also because [they] failed to frankly address the paucity of the objective evidence compared to the claimant's complaints and self-reported symptoms."[2] (Tr. 22.) These conclusions represent a misapprehension of the claimant's condition. As previously discussed, fibromyalgia is characterized by chronic pack and a lack of objective medical findings, and the plaintiff's own statements are relevant to and important in diagnosing and assessing the condition. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d.Cir. 2003) ("'[A] patient's report of complaints, or history, is an essential diagnostic tool' in fibromyalgia cases . . . ."); see also Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988) (noting that persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion").

The ALJ accepted claimant's diagnosis of fibromyalgia. (Tr. 17.) Once he did so, he "also '*had no choice* but to conclude that the claimant suffered[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms." Johnson, 338 Fed.Appx. at 8 (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (emphasis added in Johnson); see also Sánchez v. Astrue, Civ. Action No. 08-cv-00560-REB, 2009 WL 4810696, at

---

[2] Although neither Dr. Ramírez nor Dr. Freytes diagnosed plaintiff with fibromyalgia, the ALJ himself concluded that plaintiff had fibromyalgia and the symptoms the doctors noted and their findings are consistent with those that characterize and accompany a fibromyalgia diagnosis. Their opinions also evince the severity of plaintiff's functional limitations. For example, Dr. Freytes indicated that plaintiff experiences severe pain, which he attributed to other conditions, such as lumbar disc herniation and pinched lumber nerve. (Tr. 798-802.) He assessed numerous functional impairments and opined that claimant was able to sit, stand and/or walk for less than 2 hours a day, lift and/or carry less than 10 pounds occasionally and 10 pounds rarely. Id.

*4 (D.Colo. Dec. 10, 2009) (citation omitted) (finding that the ALJ "improperly substituted her own judgment for the of the medical sources" where the ALJ did not find fibromyalgia patient's subjective complaints credible when nothing in the record suggested that any treating or examining medical sources had doubted the claimant's credibility regarding the same). "The primary symptom of fibromyalgia, of course, is chronic widespread pain, and the Commissioner points to no instances in which any of claimant's physicians ever discredited her complaints of such pain." Id. In fact, not only does the Commissioner fail to suggest as such, the ALJ actually chose to discredit other instances where treating physicians did find plaintiff's reports of widespread pain to be credible. (Tr. 22.) The ALJ's finding that claimant's statements regarding her symptoms were not credible based on her ability to complete certain daily activities is not supported by substantial evidence in the record.

## IV.  CONCLUSION

The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st. Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). Furthermore, the ALJ must give good reasons for declining to give controlling weight to a claimant's treating physicians. In this case, treating rheumatologist Dr. Pancorbo's opinion regarding the severity of claimant's impairments was improperly discounted without good reasons for doing so. The Commissioner's disability decision reflects "inadequate consideration of her fibromyalgia, in itself warranting reversal and remand." Kelly v. Astrue, Civ. No. 09-78-B-W, 2009 WL 3152796, at *3 (D.Me. Sept. 28, 2009). The decision improperly implies that additional objective evidence of plaintiff's

8

fibromyalgia was necessary to support her treating physician's findings, and improperly discredits plaintiff's own complaints regarding the symptoms she experience. Based on the foregoing analysis, the court concludes that the decision of the Commissioner was not based on substantial evidence. Therefore, the Commissioner's decision is hereby VACATED and the case REMANDED for further proceedings consistent with this opinion.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 26th day of March, 2014.

                                                       s/Marcos E. López  
                                                       U.S. Magistrate Judge